IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAMONT PUGH, | : |
| Petitioner, | : CIVIL NO. 3:CV-04-448 |
| vs. | : (CHIEF JUDGE VANASKIE) |
| NEAL MECHLING, | : |
| Respondent. | : |

# MEMORANDUM

## I. Introduction

Lamont Pugh, an inmate currently confined at the State Correctional Facility at Greene, Pennsylvania, filed this habeas corpus proceeding pursuant to 28 U.S.C. § 2254 on March 1, 2004. At that time, Pugh was confined at the State Correctional Institution at Pittsburgh.[1] Pugh challenges his 1997 conviction in the Huntingdon County Court of Common Pleas for aggravated assault and possession of a weapon.

Respondent argues that Pugh's petition is time-barred. In the alternative, Respondent argues that the claims in the petition lack merit. For the reasons that follow, the petition will be

---

[1] While SCI-Pittsburgh is located within the Western District of Pennsylvania, Pugh's petition is properly filed in this Court as the state court of conviction, the Court of Common Pleas of Huntingdon County, is located within the Middle District of Pennsylvania. See 28 U.S.C. § 2241(d).

dismissed as time-barred.

## II. Background

Respondent's submissions reveal the following pertinent information. As a result of an incident which occurred on December 28, 1996 at the State Correctional Institution at Huntingdon, Pennsylvania, Pugh was convicted on November 7, 1997 of two counts of Aggravated Assault and one count of Possession of a Weapon by an Inmate.[2] Following the conviction, Pugh's trial counsel filed a Motion to Withdraw and new counsel was appointed. Sentencing was deferred by the trial court to permit new counsel time to acquaint himself with the file. On March 16, 1998, Pugh was sentenced to 3½ to 15 years imprisonment, to be served consecutively to another sentence he was serving.

On May 12, 1998, the sentencing court denied a Post-Sentence Motion filed by appellate counsel on Pugh's behalf. A Notice of Appeal was filed with the Pennsylvania Superior Court on June 2, 1998. The issues raised on appeal concerned ineffective assistance of trial counsel

---

[2] While in the Restricted Housing Unit, Pugh attempted to lunge at a guard dispensing medications with a "shiny object." Pugh consented to a cell search and was placed in a shower stall while the search was conducted. When the search produced no weapon, he was instructed to leave the stall for a body search. He refused to exit and four guards performed a videotaped extraction. One guard received injuries consistent with cutting wounds. A crude knife made out of spoon handles was found in the shower stall. (Dkt. Entry 12, Ex. I, Pa. Super. Ct. Op. dated 2/2/99 at 1-2.)

2

and trial court error in admitting certain evidence.[3] On February 2, 1999, the Superior Court affirmed Pugh's conviction. No appeal to the Pennsylvania Supreme Court was pursued.

On November 24, 1999, Pugh filed a petition under the Post Conviction Relief Act ("PCRA"). See 42 Pa. C. S. A. §§ 9541 - 9546. PCRA counsel was appointed, and an amended PCRA petition was filed on October 2, 2000. In the amended PCRA petition, the following grounds were raised: (1) trial counsel's failure to interview witnesses; (2) Commonwealth's chain of physical evidence was tainted; (3) Commonwealth withheld evidence; (4) trial Judge was biased; and (5) improper construction of jury. Also raised in the amended PCRA petition were the following claims with regard to appellate counsel: (1) failure to interview witnesses; (2) failure to raise relevant facts; (3) failure to interview the jury; (4) failure to challenge the admissibility of the flak jacket; and (5) ineffectiveness of trial counsel in failing to request fingerprint analysis of the weapon.

On December 12, 2000, the PCRA court filed a Memorandum and Order dismissing the petition without a hearing on the basis that the underlying claims raised had either been previously litigated on direct appeal, waived or were frivolous. (Dkt. Entry 12, Ex. F, Huntingdon County Ct. Com. Pl. Order.) An appeal was taken to the Pennsylvania Superior Court, raising

---

[3] The specific ineffective assistance of counsel claims were as follows: (1) failure to require fingerprinting of the weapon; (2) failure to seek suppression of the videotape of the extraction; and (3) failure to interview witnesses. Pugh also asserted that the trial court erred in not suppressing a flak jacket worn by one of the guards that evidenced a slash in the fabric.

3

the claim that the PCRA court erred when it dismissed the petition without an evidentiary hearing regarding the alleged ineffectiveness of appellate counsel for failing to interview certain witnesses and present their testimony at the post-sentencing hearing. The Superior Court denied the appeal on July 26, 2001, agreeing with the PCRA court that this claim had been previously litigated on direct appeal. (Dkt. Entry 12, Ex. C, Pa. Super. Ct. Op. at 5.) A Petition for Allowance of Appeal was filed with the Pennsylvania Supreme Court on August 24, 2001. It was later denied by Order dated December 13, 2001. (Id., Ex. A.)

Pugh filed this habeas corpus petition on March 1, 2004.[4] Following initial screening, he was directed to file an amended petition within twenty (20) days. The amended petition was thereafter filed on April 26, 2004. (Dkt. Entry 5.) A response to the amended petition along with a Memorandum of Law were filed on September 27, 2004. (Dkt. Entry 12, 13.) On October 18, 2004, Pugh moved to amend his petition to set forth grounds for equitable tolling of the limitations period. (Dkt. Entry 14.) Pugh alleged, without evidentiary support, that the statute should be tolled due to mental illness from which he suffered during the period of inactivity on

---

[4] Pugh had filed an earlier habeas corpus petition in this Court on February 28, 2003. See Pugh v. Mechling, Civil No. 3:CV-03-0367. In accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999), and Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), the Court issued an order and notice advising Pugh that he could either have the court rule on the petition as filed or withdraw it so that he could file one, all inclusive petition within the one-year limit for filing such a petition. On May 22, 2003, Pugh filed a notice stating that he wished to withdraw his petition and file a new habeas action. As such, the earlier case was closed. The pending new habeas action was not initiated until March 1, 2004.

4

his habeas petition. He also claimed that the conditions of confinement he endured precluded the timely filing of a habeas petition. The motion to amend the petition was granted, and Respondent directed to file an answer to the allegations raised by Pugh in his amendment. A supplemental response was thereafter submitted on October 21, 2005. (Dkt. Entry 19.) Respondent claimed that equitable tolling was not warranted as Pugh had offered absolutely no substantiating evidence to show that the timely filing of a habeas petition was beyond his control.

### III. Discussion

#### A. Statute of Limitations

Section 2244 of title 28 U.S.C. establishes a one-year statute of limitations for federal habeas corpus petitions filed by a person in state custody. 28 U.S.C. § 2244(d)(1). The limitations period begins to run from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A); see Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); Kapral v. United States, 166 F.3d 565, 575, 577 (3d Cir. 1999).

The Pennsylvania Superior Court affirmed Pugh's conviction on February 2, 1999. Because Pugh did not seek review in the Pennsylvania Supreme Court, his conviction became final thirty (30) days later, or March 4, 1999, when the time for seeking review by the Pennsylvania Supreme Court expired. The one-year statute of limitations therefore began

5

running on March 4, 1999, and Pugh had until March 4, 2000, to file his § 2254 petition.

Pursuant to 28 U.S.C. § 2244(d)(2), statutory tolling is provided for the period of time "during which a properly filed application for State post conviction or other collateral review with respect to the pertinent judgment or claim is pending." Pugh filed a PCRA petition on November 24, 1999. This petition was timely as it was filed within one (1) year from the date his conviction became final. See 42 Pa. C. S. A. § 9545(b)(1). From the moment Pugh filed his PCRA petition, the statute of limitations was tolled. However, approximately 8 months and 20 days of the one year habeas limitations period had expired prior to the time the PCRA petition was filed i.e., the time period between March 4, 1999 and November 24, 1999. The statute remained tolled until the Pennsylvania Supreme Court denied Pugh's petition for allowance of appeal on the PCRA petition on December 13, 2001. At this point, the unexpired time remaining on the limitations period began to again run, leaving Pugh 3 months and 10 days within which to file his § 2254 petition. Pugh therefore had until approximately March 23, 2002 to file his federal habeas corpus petition challenging his Huntingdon County conviction. The instant petition was not filed until March 1, 2004.[5] Thus, this proceeding is clearly untimely.

---

[5] While Pugh does not advance this argument, the filing of his first § 2254 petition in this Court in Civil Action No. 03-0367 does not save him in any way. First, the filing of a federal habeas petition has no tolling effect. See Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999). Second, even though Pugh opted to withdraw that petition and file a new habeas action in response to the Miller/Mason notice, his first petition was also untimely as it was not filed until February 28, 2003.

### B. Equitable Tolling

Subsequent to the filing of a response to the habeas petition, Pugh filed a motion for leave to amend his petition setting forth alleged grounds for the application of equitable tolling in this case. Specifically, he contends that between mid-2001 and late 2003, he was suffering from "serious mental diseases" causing him to hallucinate and hear voices. He also claims to have suffered periods of amnesia. He also states that he was "seriously drugged with high power psychotropic medications" which prevented him from filing a timely habeas corpus petition. Pugh further asserts that he was confined in an experimental modification unit "during the relevant times" where he was denied access to legal property and the law library, preventing the filing of a timely petition. Third, he contends that the unit within which he was confined had cruel and unusual conditions, all damaging to his "mental alertness" and preventing a timely filing on his part. (Dkt. Entry 14 at ¶ 4.)

Equitable tolling of the limitations period is to be used sparingly and only in "extraordinary" and "rare" circumstances. See Satterfield v. Johnson, 434 F.3d 185, 195 (3d Cir. 2006); LaCava v. Kyler, 398 F.3d 271, 274-75 (3d Cir. 2005). It is only in situations "when the principle of equity would make the rigid application of a limitation period unfair" that the doctrine of equitable tolling is to be applied. See Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003); Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001).

The burden of establishing entitlement to the extraordinary remedy of equitable tolling

7

rests with the petitioner. Petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims. Mere excusable neglect is not sufficient. See Satterfield, 434 F.3d at 195.

The Third Circuit Court of Appeals has held that equitable tolling of the habeas statute of limitations is permitted if: "(1) the defendant has actively misled the plaintiff; (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) the plaintiff has timely asserted his rights mistakenly in the wrong forum." Fahy, 240 F.3d at 244, cert. denied, 534 U.S. 944 (2001) citing Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).

In the instant case, there are no allegations that the Commonwealth misled Pugh regarding his claim, or that Pugh timely asserted his rights mistakenly in the wrong forum. The inquiry here focuses on whether Pugh alleges "extraordinary circumstances" based upon his alleged mental incapacity and/or the conditions purportedly existing in the unit in which he was confined during the relevant time period.

### 1.   **Mental Incapacity**

Mental incapacity is not a per se reason to toll a statute of limitations. See Nara v. Frank, 264 F.3d 310, 320 (3d Cir. 2001); Lake v. Arnold, 232 F.3d 360, 371 (3d Cir. 2000). The mental incompetence must have affected the petitioner's ability to file a timely habeas corpus petition, as the basis for equitable tolling requires that a petitioner has in some extraordinary way been prevented from asserting his or her rights. Fahy, 240 F.3d at 244-45. The burden

8

falls upon Pugh to establish that he is entitled to the equitable tolling of the limitations period. See Robinson v. Johnson, 313 F.3d 128, 142 (3d Cir. 2002). In determining whether equitable tolling is warranted, the totality of the circumstances are to be assessed. Griffin v. Stickman, No. 04-975, 2004 WL 1821142, at *6 (E.D. Pa. Aug. 11, 2004). Among the factors to be considered are "whether the petitioner has been adjudicated incompetent, and if so, when in relation to the habeas statutory period; whether petitioner has been institutionalized for his/her mental impairment; whether petitioner has handled or assisted in other legal matters which required action during the limitations period; and whether petitioner's allegations of impairment are supported by extrinsic evidence such as evaluations and/or medication." Id.

Consideration of these factors militates against equitable tolling in this case. There is no evidence of an adjudication of incompetency. There is not even any evidence of a diagnosis of mental illness. Significantly, Pugh filed a habeas petition in this Court in February of 2003, when he was purportedly incapacitated from doing so. There is no evidence of evaluations or a treatment regimen. Indeed, the record is completely devoid of any support for Pugh's bare assertion of mental incapacity set forth in his amendment to his petition. Bald and unsupported claims of incompetency are insufficient to present a viable basis for equitable tolling. See Lawrence v. Florida, 421 F.3d 1221, 1226-27 (11th Cir. 2005); Fisher v. Gibson, 262 F.3d 1135, 1145 (10th Cir.2001); Gross v. Kansas, No. 05-3425, 2006 WL 297729, at *2 (D. Kan. Feb. 8, 2006). Thus, Pugh has not made a threshold showing of evidentiary support of mental

incapacity to warrant consideration of his claim of equitable tolling.

In addition, Pugh asserts that he was mentally incompetent beginning in mid-2001 and lasting late into the year 2003. Even assuming this were true, it would then mean he was presumably competent for the majority of the period available for filing his federal habeas petition. The limitations period began to run on March 4, 1999. It was not statutorily tolled until November 24, 1999, when Pugh filed his PCRA petition. Further, it is significant that in February of 2003 Pugh was mentally capable of preparing and submitting his first habeas corpus petition in this Court, comprehending the Miller/Mason notice issued by the Court and notifying the Court of his decision to withdraw his first petition. Pugh has thus failed to show that he acted with due diligence.

In summary, Pugh has not presented one shred of evidence that he had any period of mental incapacity. Furthermore, he has failed to demonstrate the diligence necessary to warrant an evidentiary hearing on his claim. Thus, his request for equitable tolling on this basis is wholly unconvincing.

### 2.   Conditions in "Experimental Modification Unit"

Pugh also contends that he was denied access to legal property and the law library, and was subjected to "cruel and unusual" conditions while confined in an experimental modification unit. He claims that this confinement occurred during "the relevant time period," and damaged his mental alertness and ability to timely file.

Pugh, however, fails to assert any details with respect to when these alleged deprivations occurred and how they impacted his ability to pursue federal habeas relief in a timely manner. More importantly, Pugh neither alleges nor submits any evidence to back up his claims of denial of access to the courts or cruel and unusual living conditions. For example, Pugh has not submitted copies of any grievances complaining about these issues to the prison authorities. For these reasons, Pugh has failed to show that he exercised adequate diligence in attempting to file a timely petition. See generally Robinson, 313 F.3d at 142-43.

                    **s/ Thomas I. Vanaskie**
                    Thomas I. Vanaskie, Chief Judge
                    Middle District of Pennsylvania

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LAMONT PUGH,

    Petitioner, : CIVIL NO. 3:CV-04-448

vs. : (CHIEF JUDGE VANASKIE)

NEAL MECHLING,

    Respondent.

## ORDER

**NOW, THIS 11th DAY OF APRIL, 2006**, in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus is **DISMISSED**.

2. The Clerk of Court is directed to mark this matter **CLOSED**.

3. There is no basis for the issuance of a certificate of appealability in this matter.

    **s/ Thomas I. Vanaskie**
    Thomas I. Vanaskie, Chief Judge
    Middle District of Pennsylvania